UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Kimberly Chabot, a single woman, Scott Hutcherson, as his separate estate, Michelle Hutcherson, as her separate estate, and Matthew Hutcherson, as his separate estate, beneficiaries,<br><br>Plaintiffs,<br><br>v.<br><br>Tyler and Jan Chabot, husband and wife; and Tyler Chabot, as successor trustee,<br><br>Defendants. | Case No. 4:11-CV-217-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 4) and Motion to Dismiss for Failure to State a Claim (Dkt. 5). In addition, plaintiffs have filed motions requesting a variety of different orders including: (1) an order entering defendants' default (Dkts. 13, 16); (2) an order forcing defendant Tyler Chabot to pay "Excess Legal Fees Charged to Trust" (Dkt. 12); (3) an order sanctioning defense counsel (Dkt. 14); and (4) an order striking a late-filed reply brief (Dkt. 21). For the reasons discussed below, the Court will grant in part and deny in part

both motions to dismiss, and will deny all of plaintiffs' other pending motions.

The Court finds that the decisional process would not be aided by oral argument, and will resolve these motions after consideration of the parties' written submissions.  D. Idaho L. Civ. R. 7.1(d).

## BACKGROUND

This controversy has its roots in a family trust Brian and Patricia Hutcherson created in 1991. The trust originally provided that upon the death of both grantors, the remaining trust assets would be distributed as follows:  One child (Michael Hutcherson) would receive a maximum of $25,000 and each of his children (Michelle and Matthew) would receive a maximum of $10,000.  The other three Hutcherson children would split the remaining trust assets equally.  *Hutcherson Family Trust, Ex. A to Compl. (Dkt. 1-1)* ¶ 5.04

The Hutcherson family is a blended family.  Patricia Hutcherson had two children from a previous marriage – plaintiff Kimberly Chabot and defendant Tyler Chabot.  Brian Hutcherson also had two children from a previous marriage – plaintiff Scott Hutcherson and Michael Hutcherson.  Michael Hutcherson pre-deceased his parents. His children, Matthew and Michelle Hutcherson, are plaintiffs in this action.

In 2006, some fifteen years after the trust was originally created, the senior Hutchersons amended the post mortem distribution scheme.  Under the new provisions, four equal shares would be created – one for each Chabot child regardless of whether that

child was living.  The amendment acknowledged Michael Hutcherson's death and

provided that his children (Matthew and Michelle) would split Michael's share, but not

equally.  Matthew would receive 20% and Michelle would receive 80%.  *Ex. D to*

*Compl., Amendment to The Brian and Patricia A. Hutcherson Family Trust (Dkt. 1-2)*

¶ 1.

Brian Hutcherson died in 2008 and, at that point, Tyler Chabot became a co-

trustee, along with Patricia Hutcherson, of the family trust.  Patricia Hutcherson died

roughly two years later, in July 2010.  From that point forward, Tyler Chabot has been the

sole trustee of the trust.

In the two years after her husband died and before her death, Patricia Hutcherson

executed two powers of appointment related to the trust.  The first, executed in September

2008, reduced Michelle Hutcherson's share to a maximum of $20,000, reduced Matthew

Hutcherson's share to zero, and divided the remaining assets equally among the other

three children.  *Power of Appointment, Ex. E to Compl. (Dkt. 1-2)* ¶ 4.

The second power of appointment, executed roughly three months before Patricia

Hutcherson died, again altered the distribution scheme.  The end result was that Tyler

Chabot's share of trust assets increased to 54.5%.  Kimberly Chabot's share was reduced

to 24.5625% and Scott Hutcherson's was reduced to 19.6875%.  Michelle Hutcherson

would now receive a maximum of $10,000.  *Power of Appointment, Ex. G to Compl.*

*(Dkt. 1-2)* ¶ 4.

Plaintiffs believe Tyler Chabot improperly influenced his mother – who was near the end of her life and had recently undergone radiation treatment for brain cancer – to make these changes. *See, e.g., Ex. A-4 to Am. Compl. (Dkt. 9-1)* at 2 (letter from Scott Hutcherson to Tyler and Kim Chabot).  Plaintiffs further claim that Tyler Chabot has breached his fiduciary duties to them.  Among other things, they claim he used trust monies for personal expenses and kept trust property for himself.  *Am. Compl. (Dkt. 9)* ¶ 5.2.  They filed this action in May 2011.

## MOTION FOR ENTRY OF DEFAULT

The Court turns first to plaintiffs' Motions for Entry of Default (Dkts. 13, 16). Defendants responded to plaintiffs' original complaint with two motions to dismiss, one for lack of subject matter jurisdiction, and one for failure to state a claim upon which relief can be granted.  Plaintiffs, who are representing themselves in this action, moved for default – not understanding that defendants could initially respond to the complaint by filing a motion to dismiss, rather than an answer.  *See generally* Fed. R. Civ. P. 12(a)(4). In their reply, plaintiffs do not directly withdraw the motions for default, but acknowledge their misunderstanding of relevant procedural rules:

> Plaintiffs were not aware that a Motion to Dismiss would defer a filing requirement in the original complaint until the Motion was decided.  In that, we acknowledge our error and ask for the Court's continued patience and tolerance as we attempt to follow the rules of our Court to the best of our ability.

*Plaintiffs' Reply (Dkt. 23)*, at 5.

Normally, this would be sufficient for the Court to simply deny the motion.  But there is a slight wrinkle because a few days after defendants filed their motions to dismiss, plaintiffs amended their complaint.  The amended complaint triggers a new round of pleadings – meaning that the defendants should have filed new responses, which they have not done.  *See* Fed. R. Civ. P. 15(a)(3); *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000); *see generally* William W. Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, *Federal Civil Procedure Before* Trial ¶ 8:1554.  So defendants are in default, but not for the reason plaintiffs thought they were.

Regardless, the Court has discretion to allow defendants to rest on their original responses, particularly where the changes from the original complaint are few in number or only superficial in nature.  *See generally* Schwarzer *et al.* ¶ 8:1558.  Here, the amended complaint does not attempt to cure any of the alleged deficiencies outlined in the pending motions to dismiss.  Rather, plaintiffs indicate that they amended the complaint only to add a new plaintiff, Matthew Hutcherson.  *See Am. Compl. (Dkt. 9)*, at 1.  Consequently, filing a new response would almost certainly consist of simply re-filing and re-serving the motions already on file.  The Court will not require such an exercise, and orders that defendants do not need to re-file their pending motions to dismiss.[1]  The Court will consider the original motions to dismiss as challenging the amended complaint.  *Accord Washington Nat'l Ins. Co. v. Hendricks*, 855 F. Supp. 1542, 1549 (W.D. Wis. 1994)

---

[1] In the future, defendants are advised to seek an appropriate order from the Court in advance, rather than merely resting on their original responses.

(denying plaintiffs' motion for default under similar facts; noting that "the drastic sanction of default judgment is not appropriate").

Finally, the Court rejects defendants' challenge to service.  Defendants argue that plaintiffs failed to properly serve the complaint and the amended complaint because these documents were mailed, rather than personally served.  *See* Fed. R. Civ. P. 4(e).

Defendants waived the allegedly defective service of the original complaint by failing to raise that defense in their original Rule 12 motions.  *See* Fed. R. Civ. P. 12(h)(1).  As for the amended complaint, plaintiffs were not required to personally serve that document because defendants had already appeared in the action through the Rule 12(b)(6) motion.  *See* Fed. R. Civ. P. 5(a); *Employee Painters' Trust v. Ethan Enters, Inc.*, 480 F.3d 993, 999 (9th Cir. 2007) (amended complaint qualified as a "'pleading subsequent to the original complaint,'" thus allowing it to be served in any manner prescribed in Rule 5(b)) (footnote omitted; quoting Fed. R. Civ. P. 5(a)).

The Court will now turn to the remaining motions, beginning with defendants' motion to dismiss for lack of subject matter jurisdiction.

## MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION

A federal court may dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  In a motion to dismiss under Rule 12(b)(1) "the district court is not confined by the facts contained in the four corners of the complaint – it may consider facts and need not assume the truthfulness of the complaint."

*Americopters LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n. 4 (9th Cir. 2006).

Further, the plaintiff has the burden of proving jurisdiction exists.  *Tosco Corp. v.
Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

Plaintiffs allege subject matter jurisdiction under 28 U.S.C. § 1332, based on
diversity of citizenship of the parties and their allegation that the amount in controversy
exceeds $75,000.  According to the amended complaint, plaintiffs are citizens of
Washington, Nevada and Missouri, while defendants are citizens of California.  *See Am.
Compl. (Dkt. 9)* at 3-4.

Defendants argue that even if the requirements for diversity jurisdiction are met,
the probate exception nonetheless strips this Court of subject matter jurisdiction.
Alternatively, they argue that the amount in controversy does not exceed the jurisdictional
minimum.

**The Probate Exception**

The probate exception is "one of the most mysterious and esoteric branches of the
law of federal jurisdiction."  *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982) (Posner,
J.).  Its core proposition is that federal courts lack jurisdiction to probate wills and
administer estates.  That proposition stems "in large measure from misty understandings
of English legal history."  *Marshall v. Marshall*, 547 U.S. 293, 299 (2006).  More
specifically, the Judiciary Act of 1789 conferred upon federal courts only those powers
held by the English Chancery Court, and at that time, English Chancery Courts did not

probate wills and administer estates; ecclesiastical courts did.  *See generally Markham v. Allen*, 326 U.S. 490, 494 (1946); *Ashton v. The Josephine Bay Paul & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1071 (2d Cir. 1990).

Whatever the origins of the probate exception, it is ultimately practical.  It is "'designed to promote legal certainty and judicial economy by providing a single forum of litigation, and to tap the expertise of probate judges by conferring exclusive jurisdiction on the probate court.'"  *Lepard v. NDP Bank*, 384 F.3d 232, 237 (6th Cir. 2004) (quoting *Cenker v. Cenker*, 660 F. Supp. 793, 795 (E.D. Mich. 1987)).  The exception is also "distinctly limited in scope," as the Supreme Court recently clarified in *Marshall v. Marshall*, 547 U.S. 293, 299 (2006) (citing *Markham,* 325 U.S. at 494).  *Marshall* described the basic contours of the exception as follows:

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.  But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311-12.

Thus, under *Marshall*, the Court must answer two questions to determine whether the probate exception applies:  (1) Does the action require the probate or annulment of a will or the administration of the estate?  and (2) Does the action require the Court to dispose of property that is in the custody of a state probate court?

Before answering these questions, the Court must resolve a preliminary issue.

MEMORANDUM DECISION AND ORDER - 8

This dispute concerns a trust, not a will.  Courts have not uniformly decided whether the probate exception applies to trusts,[2] and the Supreme Court did not clarify that point in *Marshall.*  The Ninth Circuit's *Marshall* decision, however, held that the probate exception applied to the trust at issue there:

> Vickie Lynn Marshall cannot avoid the probate exception simply by stating that the trust which she claims was to be created for her benefit was an inter vivos trust.  Here, the trust put into question . . . not only controlled the distribution of J. Howard Marshall II's property during his lifetime, but also provided for the post mortem disposition of trust property.

*In re Marshall*, 392 F.3d 1118, 1135 (9th Cir. 2004), *reversed*, *Marshall*, 547 U.S. 293.

Although the Supreme Court reversed the Ninth Circuit's holding that the probate exception divested the district court of jurisdiction in that matter, it did not directly address this particular holding.  The Supreme Court reversed because plaintiff's claim was a widely recognized tort – not a probate matter.  547 U.S. at 312 ("Vickie's claim . . . alleges a widely recognized tort" of tortious interference with a gift or inheritance.).  The Ninth Circuit, by contrast, had concluded that Ms. Marshall's claim was "simply a disguised attack on J. Howard Marshall II's 1982 trust . . . ."  392 F.3d at 1137.

_____

[2] *Compare, e.g., Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 849 (6th Cir. 2006) ("Although it is true that federal courts have properly applied the probate exception to claims concerning trusts that act as will substitutes, the revocable trust in this case is not a will substitute."); *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 359 (3d Cir. 2004), *overruled, in part, on other grounds, by Marshall*, 547 U.S. at 311 ("We agree with the Court of Appeals for the Seventh Circuit in holding that causes of action involving trusts are treated under the probate exception in the same way as actions involving wills.") *with Sianis v. Jensen*, 294 F.3d 994, 999 (8th Cir. 2002) ("Many if not most, courts have held that the probate exception does not apply to actions involving trusts.").

Under these circumstances, the Court concludes that *Marshall* implicitly held that the probate exception analysis applies to trusts that act as will substitutes.  *Accord Marcus v. Quattrocchi*, 715 F. Supp. 2d 524 531 n.4 (S.D.N.Y. 2010) (collecting cases, noting that many courts "including the Supreme Court in *Marshall*, have applied the probate exception analysis to situations involving trusts."); *see generally* John H. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harv. L. Rev. 1108, 1137 (1984) ("Once we understand that will substitutes are nothing more than 'nonprobate wills' and that no harm results from admitting that truth, we have no basis for interpreting will substitutes differently from wills.").  Such a holding makes sense, given that Americans increasingly use trusts to transfer their wealth rather than wills.  As the Seventh Circuit observed, "Given the growth in recent years of various 'will substitutes,' we are loath to throw open the doors of the federal courts to disputes over testamentary intent simply because a decedent chose to use a will substitute rather than a traditional will to dispose of his or her estate."  *Storm v. Storm*, 328 F.3d 941, 947 (7th Cir. 2003).

Here, the Hutcherson family trust appears to be the centerpiece of the Hutchersons' estate plan and it provides for a post mortem distribution of trust assets. Consequently, the Court must determine whether the probate exception applies before exercising jurisdiction.  This brings us back to the two questions posed above, rephrased to reflect the use of the trust:  (1) Are plaintiffs asking the Court to determine the validity of a trust, or to administer the trust?  or (2) Are plaintiffs asking this Court to dispose of

trust assets?

Plaintiff's complaint purports to assert three claims – "probate of probatable assets," "breach of fiduciary duty," and "restraining order."  *Am. Compl. (Dkt. 9)* at 8-9.

This Court has jurisdiction of the breach of fiduciary duty claim, regardless of whether issues within that claim intertwine with trust issues.  After the Supreme Court's 2006 *Marshall* decision, the probate exception can no longer be used to dismiss "widely recognized tort[s] such as breach of fiduciary duty . . . merely because the issues intertwine with claims proceeding in state court."  *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 108 (2d Cir. 2007).  The Court thus rejects defendants' argument that adjudicating plaintiffs' tort claim would unduly interfere with administration of the trust.  *See Reply (Dkt. 20)*, at 7.

Defendants point out that plaintiffs' complaint does not seek monetary damages.  But a prayer for relief does not necessarily limit the nature or scope of relief a trial court may grant.  Plaintiffs are entitled to whatever relief is appropriate to the claims alleged in the complaint and proved.  *See* Fed. R. Civ. P. 54(c) (non-default judgment "should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings*.") (emphasis added); *see also Z Channel, Ltd. v. Home Box Office, Inc.*, 931 F.2d 1338, 1341 (9th Cir. 1991) (reversing summary judgment; plaintiff may be entitled to damages even though the complaint seeks only injunctive and declaratory relief); *Int'l Harvester Credit Corp. v. East Coast Truck*, 547 F.2d 888, 891 (5th Cir. 1977) (plaintiff

entitled to relief even where there was no prayer for relief because the complaint
otherwise fairly stated the nature of relief plaintiff was entitled to receive, and plaintiff
proved the right to relief at trial).

Moreover, construing this pro se complaint liberally, it easily sets forth facts
supporting breach of fiduciary duty, as well as damages resulting from such a breach. *See
generally Hebbe v. Pliler*, 627 F. 3d 338, 342 n.7 (9th Cir. 2010) (pro se complaints
liberally construed).  For example, in one of the many documents attached to the
complaint, plaintiff Scott Hutcherson indicates that the cash assets of the trust should be
around $727,000, whereas Tyler Chabot reported cash assets of around $530,000. *See
Letter from Scott Hutcherson to Tyler Chabot, Ex. A-2 to Am. Compl. (Dkt. 9-1),* at 4.
Further, the prayer for relief includes a catch-all request for "such other and further relief
as the Court deems just, proper, and equitable." *Am. Compl. (Dkt. 9)*, at 10-11.

In sum, plaintiffs have properly alleged a breach of fiduciary duty claim and this
Court must therefore exercise jurisdiction.  As "Chief Justice Marshall famously
cautioned:  'It is most true that this Court will not take jurisdiction if it should not: but it
is equally true, that it must take jurisdiction if it should . . . .  We have no more right to
decline the exercise of jurisdiction which is given, than to usurp that which is not given."
*Marshall*, 547 U.S. at 298-99 (quoting *Cohens v. Virginia*, 6 Wheat. 265, 404, 5 L. Ed.
257 (1821)).

Plaintiffs should be aware, however, that they have requested some forms of relief

that this Court has no jurisdiction to award.  The prayer for relief asks for the following,

specific forms of relief:

> (1)    removal of Tyler Chabot as trustee of the family trust;

> (2)    appointment of the Bank of Idaho as a replacement trustee;

> (3)    "[c]ompletion of an accounting by a forensic accountant to accurately
>        identify and locate all assets and property belonging to the Trust, or that
>        should be properly included in the Trust, for the time period from June 1,
>        2006 until Tyler Chabot is replaced as Successor Trustee;

> (4)    Injunctive relief "prohibiting Defendant Tyler Chabot from any additional
>        financial transactions, prohibiting use of trust funds assets for personal legal
>        defense or utilizing Trust assets for personal purposes in regards to assets
>        including use of property of the Decedent or the FAMILY TRUST . . . .";
>        and

> (5)    attorneys' fees.

*Am. Compl. (Dkt. 9)*, at 10.  Further, although the complaint itself does not request

distribution of the trust assets, the affidavits attached to the complaint indicate plaintiffs

believe this Court has the power to do so.  *See Kimberly Chabot Aff. (Dkt. 9-5)* ¶ 49

("Scott, Michelle, Matt and I felt we had no other option but to petition the court to

appoint a neutral Trustee to finalize the taxes, follow probate law, *and distribute the*

*verifiable assets of the trust.*") (emphasis added).

Idaho's court of registration has exclusive jurisdiction "of proceedings initiated by

interested parties concerning the internal affairs of the trust."  Idaho Code § 15-7-201(a).[3]

---

[3]  This section provides, in relevant part, as follows:

Relevant statutory law clarifies that, among other things, the court of registration has

exclusive jurisdiction to remove and appoint trustees, determine the validity of the trust,

and distribute trust assets.  *See id.*

Consequently, the plaintiffs cannot ask this Court to remove a trustee, appoint a

new one, or distribute trust assets.  But the fact that plaintiffs wrongly asked for these

forms of relief does not transmute their breach of fiduciary duty claim into a trust matter.

As for plaintiffs' request for injunctive relief, the Court does not have the power to

broadly enjoin the trustee from taking "*any*" financial actions, as that could unduly

---

**§ 15-7-201.  Court – Exclusive jurisdiction of trusts**
a)   The court of registration has exclusive jurisdiction of proceedings
     initiated by interested parties concerning the internal affairs of trusts.
     Proceedings which may be maintained under this section are those
     concerning the administration and distribution of trusts, the
     declaration of rights and the determination of other matters involving
     trustees and beneficiaries of trusts. These include, but are not limited
     to, proceedings to:

     (1)   appoint or remove a trustee;

     (2)   review trustees' fees and to review and settle interim or final
           accounts;

     (3)   ascertain beneficiaries, to determine any question arising in the
           administration or distribution of any trust including questions of
           construction of trust instruments, to instruct trustees, and to
           determine the existence or nonexistence of any immunity, power,
           privilege, duty or right; and

     (4)   release registration of a trust.

interfere with trust administration.  But plaintiffs may seek injunctive relief to prevent any ongoing breaches of fiduciary duty.

Finally, plaintiffs' request for an accounting is proper to the extent they seek to determine trust assets defendant Tyler Chabot allegedly kept for himself or otherwise failed to turn over to the trust.  *Cf. Wisecarver v. Moore*, 489 F.3d 747 (6th Cir. 2007) (request for accounting of assets removed from estate before testator's death did not implicate probate exception).

The Court will deny the motion to dismiss for lack of subject matter jurisdiction, except to the extent plaintiffs ask this Court to administer the trust, remove a trustee, appoint a new trustee, broadly enjoin the trustee from performing his trust duties, or distribute trust assets.

**The Amount in Controversy**

In their reply, defendants argue that diversity jurisdiction fails because plaintiffs fail to plead facts showing that the amount in controversy exceeds $75,000.  *See Reply (Dkt. 20)*, at 8-9.  When a defendant attacks the amount in controversy, plaintiffs have the burden of showing that it does not appear to a legal certainty that the claim is for less than the jurisdictional amount.  "This is called the 'legal certainty' standard, which means a federal court has subject matter jurisdiction unless, 'upon the face of the complaint it is obvious the suit cannot involve the necessary amount.'"  *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (citing *St. Paul Mercury Indemnity*

*Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)).

Here, the documents attached to the complaint indicate plaintiffs' belief that at least $200,000 is missing from the trust.  Plaintiffs further allege that there are other various other valuable items (including antiques, jewelry, and other collectibles) that Mr. Chabot has kept for himself, rather than turning over to the trust.  The amount in controversy thus exceeds the jurisdictional minimum.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests, . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  Where a complaint pleads facts that are "merely consistent with" a

defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728,

737 (9th Cir. 2009) (issued two months after *Iqbal*).[4]  The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice.  *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987).  The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004).  The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

---

[4] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim . . . ."  Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley*, a question arises whether the liberal amendment policy of *Harris v Amgen* still exists. Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*.  *See Market Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication).  Accordingly, the Court will continue to employ the liberal amendment policy.

**Tyler Chabot**

Defendants' motion to dismiss Tyler Chabot from this lawsuit is based on an argument that there are, in effect, two separate Tyler Chabots: (1) Tyler Chabot the individual;  and (2) Tyler Chabot the trustee.  Defendants summarize their argument as follows:

> As the Trustee, Tyler Chabot was charged with certain duties.  Tyler Chabot the individual did not have any Trust related duties.  While wearing the proverbial "hat" of a trustee, Tyler Chabot had certain rights and duties related to the Trust.  All of the allegations in the Complaint relate to Tyler Chabot in the capacity – or under the hat – of "Trustee".  Tyler Chabot the individual simply did not have any of the duties of a trustee, and as such, could not as a matter of law breach any of those duties.

*Reply in Support of Mot. to Dismiss (Dkt. 17)*, at 4.

Defendants do not cite any legal authority to support their theory that Tyler Chabot the individual must be dismissed, while Tyler Chabot the trustee should remain as a defendant in this lawsuit.  The central theme of plaintiffs' complaint is that Mr. Chabot personally breached his fiduciary duties.  If this is true, he will be personally liable for damages flowing from that breach.  *See* Idaho Code § 15-7-306(b) ("A trustee is personally liable for obligations arising from ownership or control of property of the trust estate or for torts committed in the course of administration of the trust estate only if he is personally at fault."); *see generally* 76 Am. Jur. 2d Trusts § 333.  The Court will therefore deny the motion to dismiss Mr. Chabot, as an individual, from this action.

**Jan Chabot**

The Court will grant the motion as to Jan Chabot.  Defendants correctly point out that Jan's name appears in the complaint, but there are no specific, substantive allegations against her.

In their opposition, plaintiffs argue that Jan was involved in Tyler's breach of his fiduciary duties.  For example, plaintiffs state, "Jan Chabot may well have been actively involved in writing checks belonging to the Trust . . . ." *Plaintiff's Response (Dkt. 15)*, at 7.  Plaintiffs then point to three checks, drawn on the trust account, where it appears that Jan began to sign the checks, but her name is crossed out and replaced with Tyler's.  *See Check Nos. 603, 613, 614 (Exs. B-3.5 to Am. Compl.).*  Plaintiffs further indicate that handwriting on some of the checks is "dissimilar to Tyler Chabot's handwriting." *Plaintiff's Response (Dkt. 15)*, at 7.  Plaintiffs also appear to assert that Jan was unjustly enriched by Tyler's breach of fiduciary duty.  *See id.* at 6 (Jan "knew that the money flowing to their benefit from the Trust via her husband was not their money.  The ill-gotten gain could be similar in nature to receiving stolen property.").

These facts and theories are not set forth in the complaint or in any of the various documents attached to the complaint.[5]  However, if Jan was aware that her husband was breaching his fiduciary duties as trustee, and she participated in those breaches, she may be personally liable for the losses caused by the breach.  "The general rule in trusts is that

---

[5]  The referenced checks appear as exhibits to the amended complaint, but plaintiffs did not explain their theory in the complaint.  Copies of the checks, standing alone, do not provide defendants with sufficient notice of plaintiffs' claims against Jan Chabot.

a third person who 'has notice that the trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust.'" *Taylor v. Maile*, 127 P.3d 156, 163-64 (Idaho 2005) (quoting Restatement (Second) of Trusts § 326 (1969)); *see also* Restatement (Second) of Torts § 874 cmt. c (1979) ("[a] third person who, although not a transferee of trust property, has notice that the trustee is committing a breach of trust and participates therein is liable to the beneficiary for any loss caused by the breach of trust."). Plaintiffs will therefore be granted leave to amend their complaint.

Finally, the Court notes that plaintiffs filed a sur-reply, entitled "Response to Defendants Reply Memorandum." *See Dkt. 22.* Plaintiffs are advised that parties opposing a motion have one chance to set out their factual and legal arguments as to why the motion should not be granted – within their response. Sur-replies, or "Responses to Replies" are not permitted unless the Court orders otherwise. Moreover, nothing in the sur-reply alters the Court's conclusion that plaintiffs have failed to state a claim as to Jan Chabot.

## MOTION REGARDING LEGAL FEES

Plaintiffs' request that this Court "order Tyler Chabot, individually, to pay excess legal fees [i]ncurred by the Trust, as a result of his breaches of fiduciary duty in an amount to be determined by the Court." *Mot. (Dkt. 12)*, at 1. Plaintiffs do not offer any legal authorities in support of this motion, and they do not detail any specific facts other

than to generally state that the motion is supported by the complaints, affidavits, and all other documents they have filed with the Court.  *Id.*

This motion will be denied because it is premature.  If plaintiffs are able to prove that Tyler Chabot caused the trust to incur additional legal fees because of his alleged breaches of fiduciary duty, a damages award, if any, would be made after the lawsuit has runs its course and a judgment entered.  To the extent plaintiffs seek to prevent ongoing breaches of fiduciary duty before this action is decided on the merits, they must comply with the various procedural and substantive rules related to injunctive relief.  *See generally* Schwarzer *et al.*, *Federal Civil Procedure Before Trial* at 13-1 to 13-126 (chapter related to injunctive relief).

### MOTION TO STRIKE REPLY BRIEF

The Court will deny plaintiffs' unopposed request for an order striking a late-filed reply brief.  Defendants did not timely file their reply in support of the motion to dismiss for subject matter jurisdiction.  The opposition was filed July 7, 2011.  Reply briefs are due within fourteen days (plus three days assuming service by mail or email).  *See*  D. Idaho L. Civ. R. 7.1(b)(3); Fed. R. Civ. P. 6(d).  The deadline to file a reply, therefore, was July 25, 2011.[6]  Defendants did not file their reply until August 9, 2011.

Plaintiffs should be aware that reply briefs are optional.  *See* D. Idaho L. Civ. R. 7.1(b)(3) ("The moving party *may* submit a reply brief, . . . .") (emphasis added).

_____

[6] Because the last day to file fell on Sunday, July 24, the deadline to file was the following Monday, July 25.  Fed. R. Civ. P. 6(a)(2)(C).

Consequently, the Court denies plaintiffs' request to deny (or "dismiss") the entire motion based on the late-filed reply.  Further, although this motion is unopposed, in the interests of adjudicating motions on the merits, the Court considered the reply brief in ruling on the motion to dismiss.  Defendants are cautioned that in the future, the Court may not consider late-filed pleadings.

## MOTION FOR RULE 11 SANCTIONS

Plaintiffs' motion for Rule 11 sanctions against defense counsel is without merit for the reasons stated in defendants' response.  *See Dkt. 18* at 6-9.  Plaintiffs ask for Rule 11 sanctions based on a "false" certificate of service, which wrongly indicated that plaintiffs had been electronically served.  Defense counsel explained, however, that they assumed plaintiffs were registered ECF participants.  Given that assumption, defense counsel did not serve their Motion to Dismiss for Lack of Subject Matter Jurisdiction upon plaintiffs by mail.  *See June 14, 2011 Certificate of Service (Dkt. 4)*, at 3 (certificate of service states the document was filed "electronically through the CM/ECF system, which caused . . . [plaintiffs] . . . to be served by electronic means . . . .").  Upon learning of their error, defense counsel apologized and mailed (and e-mailed) the motion.  *See June 20, 2011 e-mail (Dkt. 10-1)*.

Nothing in this conduct approaches the gravity of a Rule 11 violation.  The Court will therefore deny the request for sanctions.  The Court will also deny defense counsel's request to recover expenses incurred in defending the Rule 11 motion.

**IT IS ORDERED:**

1.      Plaintiffs' Motions for Entry of Default (Dkt. 13, 16) are **DENIED.**

2.      Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

      (Dkt. 4) is **GRANTED** in part and **DENIED** in part as explained above.

3.      Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 5) is

      **GRANTED** in part and **DENIED** in part.  Individual defendant Jan Chabot

      is dismissed without prejudice.  Plaintiffs may re-file an amended complaint

      within 30 days of this order.  If plaintiffs elect to file a second amended

      complaint, this document should be self-contained – meaning that it should

      not simply incorporate allegations made in previous complaints, or refer to

      exhibits attached to prior complaints.  Instead, any newly filed complaint

      should include all relevant exhibits and allegations.

4.      Plaintiffs' Motion to Order Tyler Chabot to Pay Excess Attorneys Fees

      (Dkt. 12) is **DENIED**.

5.      Plaintiffs' Motion for Rule 11 Sanctions (Dkt. 14) is **DENIED**.

6.      Plaintiffs' Motion to Strike Reply (Dkt. 21) is **DENIED**.

DATED:  **November 14, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 24**